CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
February 06, 2026
LAURA A. AUSTIN, CLERK
BY: s/ S. Neily, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BRANDON L. S.,[1] | ) |
| Plaintiff | ) Civil Action No. 7:25-CV-00179 |
| v. | ) |
| FRANK BISIGNANO, Commissioner of Social Security, | ) By: Hon. Michael F. Urbanski<br>) Senior United States District Judge |
| Defendant | ) |

## MEMORANDUM OPINION

Plaintiff Brandon L. S. ("Brandon") filed this action challenging the final decision of the Commissioner of Social Security denying his claim for Supplemental Security Income ("SSI") under the Social Security Act, 42 U.S.C. §§ 423 and 1381a. In support of his application, Brandon argues that the determination of the administrative law judge ("ALJ") that he is not disabled is not supported by substantial evidence. Pl.'s Br., ECF No. 12. The Commissioner filed a response arguing that substantial evidence supports his determination that Brandon is not disabled. Comm'r's Br., ECF No. 14.

As discussed more fully below, the court finds that substantial evidence does not support the ALJ's determination that Brandon is not disabled. Accordingly, the Commissioner's determination that Brandon is not disabled is **VACATED** and this matter is

---

[1] Due to privacy concerns, the court adopts the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

**REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further development in accordance with this opinion.

### I. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990), and Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). The court will uphold a Social Security disability determination if "'(1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings.'" Oakes v. Kijakazi, 70 F.4th 207, 212 (4th Cir. 2023) (quoting Arakas v. Comm'r Soc. Sec. Admin., 983 F.3d 83, 94 (4th Cir. 2020)).

A court may neither undertake de novo review of the Commissioner's decision, reweigh conflicting evidence, nor substitute its judgment for that of the ALJ. Id. Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Laws, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S.

197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

Nevertheless, the court does not "'reflexively rubber-stamp an ALJ's findings.'" Oakes, 70 F.4th at 212 (quoting Arakas, 983 F.3d at 95). Remand is appropriate when the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." See Mascio v. Colvin, 780 F.3d 632, 636–37 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"). See also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted).

## II. Claim History

Brandon was born in 1997 and graduated from high school. R. 177, 205. He has no past relevant work history. R. 205. He filed his application for benefits on November 16, 2021, alleging an onset date of October 1, 2021. R. 177. He alleges disability based on Crohn's disease, major depressive disorder, and high blood pressure. R. 204.[2] His reported symptoms include having irritable bowels, fatigue, weakness, chills, headaches, two or three bowel movements lasting up to 30 minutes at a time followed by a short period of extreme fatigue

---

[2] "Crohn's disease is a type of inflammatory bowel disease (IBD) that causes swelling and irritation of the tissues, called inflammation, in the digestive tract. This can lead to belly pain, severe diarrhea, fatigue, weight loss, and malnutrition." https://www.mayoclinic.org/diseases-conditions/crohns-disease/symptoms-causes/syc-20353304 (last viewed Jan. 27, 2026).

3

two or three times per day, other shorter bowel movements up to six times per day, loss of appetite, anxiety, and overwhelming sadness. R. 221, 45, 54–56.

The ALJ issued a determination following the administrative hearing, applying the five-step evaluation process described in the regulations. R. 17–28.[3] The ALJ first found that Brandon had not engaged in substantial gainful activity since his alleged onset date of October 26, 2021. R. 19. The ALJ next found that Brandon had severe impairments of Crohn's disease, obesity, major depressive disorder, and generalized anxiety disorder. Id. The ALJ determined that Brandon did not have an impairment or combination of impairments that met or equaled a listed impairment. R. 20.

The ALJ found that Brandon had the residual functional capacity ("RFC") to do light work with the following additional limitations: no more than frequent climbing of ramps and stairs and occasional climbing of ladders or scaffolds. He could tolerate occasional exposure to unprotected heights. He should avoid occupations that would expose him to noise above level three noise intensity. He was able to understand, retain, and carry out simple instructions,

---

[3] The ALJ makes a series of determinations: (1) Whether the claimant is engaged in substantial gainful activity; (2) Whether the claimant has a medically determinable impairment that is "severe" under the regulations; (3) Whether the severe impairment or combination of impairments meets or medically equals the criteria of a listed impairment; (4) Whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) Whether the claimant is able to do any other work in the national economy, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a) and 416.920(a). If the ALJ finds that the claimant has been engaged in substantial gainful activity at Step 1 or finds that the impairments are not severe at Step 2, the process ends with a finding of "not disabled." Mascio, 780 F.3d at 634-35. At Step 3, if the ALJ finds that the claimant's impairments meet or equal a listed impairment, the claimant will be found disabled. Id. at 635. If the analysis proceeds to Step 4 and the ALJ determines the claimant's RFC will allow him to return to his past relevant work, the claimant will be found "not disabled." If the claimant cannot return to his past relevant work, the ALJ then determines, often based on testimony from a vocational expert, whether other work exists for the claimant in the national economy. Id. The claimant bears the burden of proof on the first four steps and the burden shifts to the Commissioner on the fifth step. Monroe, 826 F.3d at 178–79.

with occasional workplace changes and was capable of occasional decision-making in regards to workplace changes. R. 23–24.

Based on the testimony from a vocational expert, the ALJ found that Brandon could perform the requirements of jobs such as that of a survey worker, photocopy machine operator, and fast-food worker and thus was not disabled. R. 27–28. Brandon sought review from the Appeals Council, which denied review on January 22, 2025. R. 1–5. This lawsuit followed.

Brandon argues that the ALJ erred in several ways when he determined that Brandon was not disabled: (1) He failed to properly consider the impact of Brandon's obesity upon his other impairments and on his RFC; (2) he failed to properly assess Brandon's subjective allegations regarding his frequent bowel movements and fatigue; (3) in his RFC assessment he failed to make specific findings regarding whether Brandon's impairments would result in excessive bathroom breaks, cause him to need to take extra breaks due to fatigue, or would result in an unacceptable number of absences from work; and (4) he failed to properly assess the effect of Brandon's mental impairments on his ability to concentrate, persist, and maintain pace. The court has considered Brandon's second and third arguments together and finds that they require that his case be remanded.

### III. Analysis

A claimant's RFC "is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Titles II and XVI: Assessing Residual

Functional Capacity in Initial Claims, SSR 96-8P, 1996 WL 374184 at *2 (S.S.A. 1996) ("SSR 96-8P"). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." Id. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

In assessing the RFC, the adjudicator should consider the claimant's medical history, medical signs, and laboratory findings, the effects of treatment, reported daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms that are reasonably attributed to a medically determinable impairment, evidence from attempts to work, need for a structured environment, and work evaluations, if available. Id. at *5. The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. Id. at *7.

The RFC must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR §§ 404.1545 and 416.945. Only after that may the RFC be expressed in terms of the exertional levels of work: sedentary, light, medium, heavy, and very heavy. SSR 96-8p, 1996 WL 374184 at *1, 3. Physical abilities set out in 20 C.F.R. §§ 404.1545(b) and 416.945(b) include sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, and crouching. Mental abilities are set out in §§ 404.1545(c) and 416.945(c). Abilities set out in paragraph (d) of the regulation include those affected by skin impairments or epilepsy, impairment of vision, hearing, or other senses, or impairments which

impose environmental restrictions. The ALJ also must explain how he considered and resolved any material inconsistencies or ambiguities in the record. SSR 96-8p, 1996 WL 374184 at *7.

There is no per se rule that an ALJ opinion is not supported by substantial evidence if he fails to perform an explicit function-by-function analysis. Mascio, 780 F.3d at 636. Rather, "remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. In Mascio, the case was remanded because the ALJ's assessment of the claimant's RFC did not address conflicting evidence in the record and did not include an analysis of whether the claimant could perform certain functions for an entire workday. Id. at 637.

As set forth above, the ALJ found that Brandon had the RFC to do light work with additional limitations. However, this determination is flawed in such a way that it "frustrates meaningful review." Id. at 636. Accordingly, the court cannot find that the ALJ opinion is supported by substantial evidence.

Brandon was diagnosed with Crohn's disease in March 2019 after developing abdominal pain and diarrhea. R. 2023. Due to intermittent symptoms not improving on steroids, weight loss, and a tight ileocecal valve stricture, Brandon underwent ileocolonic resection with removal of 30 cm of ileum and a temporary ileostomy in March 2019. Id. He had a complicated post-surgical course with an ileostomy revision in June 2019 and treatment of a peristomal abscess in July 2019. Id. The ileostomy was reversed in November 2019. Id. Subsequently he had symptoms of abdominal pain and diarrhea. A colonoscopy in June 2020 showed few aphthous ulcers and erosions in the neo-terminal ileum with a Rutgeert's score of

i1, pseudopolyps in the right colon and rectum, and moderate internal hemorrhoids. Id. Brandon began treatment on Humira after which a capsule endoscopy was performed for persistent symptoms and demonstrated jejunal and ileal ulcers. The Humira treatment was increased without a change in symptoms, and he was switched to treatment with Renflexis, beginning in December 2021. R. 2024.

Notwithstanding the treatment Brandon has received, he has continued to experience symptoms related to Crohn's disease. At the ALJ hearing, Brandon testified that he has bowel movements that may last as long as thirty minutes two or three times per day, and shorter bowel movements six or eight times during the day. R. 54–55. He also testified that after some bowel movements, he feels extremely fatigued for up to fifteen minutes. R. 56.

Brandon described his bowel movements and fatigue in a similar fashion to health care providers on multiple occasions after his onset date. See R. 655 (reporting to gastroenterologist on November 11, 2021, that he was having five to seven bloody and mucoid stools per day); R. 1577 (reporting on November 24, 2021, that he had been having fatigue and chills since May 2021); R. 654 (describing on December 14, 2021, that he was having "'horrible bits of feeling faint and being cold and hot'" and having bleeding and mucous with bowel movements); R. 1672 (reporting on January 3, 2022, increased weakness, chills, and extreme fatigue with five to seven bouts of diarrhea per day); R. 1749 (reporting on March 1, 2022, that he was feeling better with less fatigue, but still having five to six bowel movements per day); R. 1738 (reporting on May 4, 2022, that he was having six or seven bowel movements per day); R. 1702–03 (reporting on May 13 and May 18, 2022, that he had been having excessive diarrhea "for weeks"); R. 1726 (reporting on June 28, 2022, that he was having five to six

8

bowel movements per day and persistent fatigue); R. 1705 (describing on July 12, 2022, that he was having occasional diarrhea and fatigue); R. 1904 (reporting on August 24, 2022, that he was having episodes of weakness and dizziness); R. 2001 (describing on November 19, 2022, that he had been having eight episodes of mucoid diarrhea daily for the previous four days); R. 1878 (reporting on March 15, 2023, that he had been having weakness, fatigue, and bloody diarrhea for the past week); R. 2049 (reporting on April 12, 2023, that he was having bloody diarrhea along with malaise and fatigue); R. 1990 (reporting on May 23, 2023, that he was having four to five bowel movements per day); R. 2023-26 (reporting on August 2, 2023, that he was having three or four bloody bowel movements per day, accompanied by fatigue and malaise).

The vocational expert testified that an employee could be off-task for ten to fifteen percent of the workday and could be absent one to two days per month and maintain employment. Additional time off-task or additional absences would be unacceptable to employers. R. 64–65. Brandon's testimony at the ALJ hearing and his reports to medical providers about the frequency and length of his bowel movements and related fatigue and malaise, when considered with the vocational expert's testimony, raises the question of whether Brandon can sustain work activities in an ordinary work setting on a regular and continuing basis, defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8P, 1996 WL 374184 at *2.

The ALJ did not adequately address this issue. When evaluating a claimant's reported symptoms, the ALJ first considers whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's

9

symptoms. Once an underlying physical or mental impairment is established, the ALJ evaluates the intensity and persistence of symptoms to determine the extent to which the symptoms limit a claimant's ability to perform work-related activities. Social Security Ruling 16-3P Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304 (S.S.A. Oct. 25, 2017) ("SSR 16-3P"). In making the second determination, the ALJ first looks at the objective medical evidence. Id. at *5. If the ALJ cannot make a disability determination that is fully favorable based on objective medical evidence, other evidence, such as statements from the claimant, medical sources, and other sources are considered. Id. at *6.

In other words, the finding that an impairment could reasonably be expected to produce pain or other symptoms does not involve a determination as to the intensity, persistence, or functionally limiting effects of the symptoms. 20 C.F.R. § 404.1529(b). And while there need not be objective evidence of the pain itself or of its intensity, Arakas, 983 F.3d at 95 (citations omitted), the adjudicator is directed to consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between a claimant's statements and the rest of the evidence, including the claimant's history, the signs and laboratory findings, and statements by medical sources or other persons about how the symptoms affect the claimant. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

In Brandon's case, the ALJ summarized Brandon's testimony without quantifying the number of bowel movements he has, other than to say he "spends long periods in the bathroom with bloody diarrhea," and noted that Brandon testified that he must lay down two to four times per day. R. 24. The ALJ found Brandon's statements regarding the intensity, persistence, and limiting effects of his symptoms to be not entirely consistent with the medical

evidence and other evidence in the record. R. 25. In support of this finding, the ALJ noted that Brandon continues to complain of malaise, fatigue, diarrhea, and blood in his stool, but the ALJ also cited to objective evidence showing the treatment Brandon receives "helps control his bowel disease." Id. The ALJ concluded that "[b]ased on the record that notes minimal disease activity, in combination with the claimant's subjective complaints, the undersigned finds the claimant is limited to a range of light work as outlined above." Id.

This explanation is insufficient. First, the ALJ cannot rely on a lack of objective evidence to discount Brandon's claims of frequent bowel movements and fatigue to make this finding. As set forth above, while there must be objective medical evidence of some condition that could reasonably produce the pain or other symptoms, a claimant can rely exclusively on subjective evidence to prove that the pain or symptoms are so intense and persistent that they limit his ability to perform work-related activities. Arakas, 983 F.3d at 95–96. Here, the ALJ does not adequately explain why Brandon's testimony as to the frequency of his bowel movements as well as his fatigue and malaise are inconsistent with the medical evidence or other evidence in the record, especially when considered alongside Brandon's regular complaints to providers about fatigue, frequent bowel movements, and extended bouts of bloody diarrhea.

Second, the ALJ opinion contains no finding as to the frequency of bowel movements that Brandon has daily, and fails to discuss what effect, if any, frequent bowel movements might have on his ability to sustain employment. Without this explanation, the court has no way of knowing if the ALJ considered this issue in assessing the RFC. See Sharee B. v. Bisignano, No. 5:25-cv-00045, 2025 WL 4065846, at *16 (S.D.W.V. Dec. 17, 2025) adopted

11

by 2026 WL 148146 (S.D.W.V. Jan. 20, 2026) (remanding where ALJ provided no analysis of the effect of a claimant's Crohn's-related symptoms on her RFC and no analysis of whether she would be off-task for a significant portion of the workday); Kimberly F. v. Kijakazi, No. 2:22-cv-00365, 2023 WL 2878815, at *12 (S.D.W.V. Feb. 23, 2023) adopted by 2023 WL 2872541 (S.D.W.V. Apr. 10, 2023) (remanding where ALJ recognized claimant's ongoing treatment for Crohn's disease and her complaints of diarrhea and pain, but did not explain why she did not need additional bathroom breaks, when the evidence showed she had daily diarrhea requiring numerous trips to the bathroom); and Anders v. Colvin, No. 1:13-cv-284-GCM, 2015 WL 4656291 at *5 (W.D.N.C. Aug. 6, 2015) (remanding when ALJ failed to sufficiently explained how claimant's gastrointestinal problems factored into his RFC assessment, making it impossible for the court to conclude whether the findings were supported by substantial evidence).

In sum, the court is left to guess about whether or how the ALJ considered the evidence of Brandon's need to use the restroom multiple times per day and, in some instances, for extended periods. The court also cannot tell from the ALJ opinion whether or how he considered Brandon's testimony about fatigue and its possible effect on his ability to maintain employment. Because of this lack of analysis, the court must **REMAND** this case for further development.

As the court finds it proper to remand this case based on the incomplete RFC determination, Brandon's additional allegations of error are not addressed. See Mohammed H. v. Saul, No. TMD 20-1178, 2021 WL 1174720, at *7 (D. Md. Mar. 29, 2021) (citing Tanner v. Comm'r of Soc. Sec., 602 F. App'x 95, 98 n.* (4th Cir. 2015) (per curiam) (remanding on

other grounds and declining to address claimant's remaining argument). However, upon remand, the Commissioner should take into consideration Brandon's remaining allegations of error.

## IV. Conclusion

The court concludes that the ALJ in this case erred because he did not explain why he found Brandon's allegations of frequent and sometimes time-consuming bowel movements to be inconsistent with other evidence in the record, and because he did not either include a need for frequent trips to the restroom in the RFC or explain why such an accommodation was not necessary. Nor did the ALJ assess whether Brandon would need breaks from work due to fatigue in addition to those customarily provided in the workplace. This lack of explanation precludes the court from finding that the ALJ opinion is supported by substantial evidence. Accordingly, the court **VACATES** the Commissioner's decision that Brandon is not disabled and **REMANDS** this case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further development in accordance with this opinion. This matter is **DISMISSED** and **STRICKEN** from the active docket of the court.

An appropriate order will be entered.

It is so **ORDERED**.

Entered: 02/04/2026

Michael F. Urbanski
Senior United States District Judge